**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

GANG SHAN,

Petitioner,

v. Case No. 1:26-cv-03348 KWR-GJF

WARDEN, *Torrance County Detention Facility*,
MARY DE ANDA-YBARRA, *Field Office Director, El Paso, U.S. Immigration and Customs Enforcement,*
ACTING DIRECTOR*,*
*Immigration and Customs Enforcement,*
TODD BLANCHE, *U.S. Attorney General, and*
MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*,

Respondents.

**ORDER DENYING HABEAS PETITION**

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus. Petitioner is a noncitizen who is detained by ICE. Petitioner previously received a bond hearing pursuant to 8 U.S.C. § 1226(a). Petitioner was denied bond. Petitioner asserts that his detention violates due process, and he challenges his bond decision as constitutionally deficient. As explained below, Petitioner's Petition is not well-taken and therefore is **DENIED**.

**BACKGROUND**

Petitioner is a citizen of China and is currently detained by ICE at the Torrance County Detention Facility. Petitioner was admitted into the United States on or about June 27, 2016 on a B-2 nonimmigrant visa. Doc. 2 at 3. He was authorized to remain in the United States until December 26, 2016. Petitioner asserts that he has no criminal history.

Petitioner was arrested by ICE on the morning of August 29, 2026. He was arrested pursuant to a warrant, and the certificate of service attests it was served on him. Doc. 6-2 at 1. On September 9, 2026, Petitioner was charged by a Notice to Appear for having been admitted to the United States but remaining without authorization. Doc. 6-3.

On September 11, 2026, an immigration judge held a bond hearing and denied bond, stating as follows in the written order:

> Flight risk, speculative form of relief, no evidence of a fixed address, no family ties to United States citizens, he presents a non-viable sponsor, respondent is relying on his wife's application for asylum based upon China's former family planning policy that has now been eradicated, respondent entered in 2016.
>
> Danger to the community. He was previously driving as a commercial driver without a sufficient command of English language.

Order of the Immigration Judge, September 11, 2026, Doc. 6-4. On September 21, 2026, an immigration judge held another custody redetermination hearing. The immigration judge denied bond, stating as follows in the written order:

> No material change in circumstance since the prior bond redetermination on September 11, 2026. 8 C.F.R. 1003.19(e). No proposed forms of relief filed with the Court. Any protective applications appear to be barred by the One Year Time bar.

Doc. 6-5 at 1.

Petitioner asserts the following claims. First, he asserts that Respondents violated his procedural due process rights by not providing him a pre-deprivation bond hearing prior to detaining him. Petitioner also asserts that his bond hearing did not satisfy due process because the immigration judge failed to adequately analyze the *Guerra* factors. Doc. 2 at 9-10.

Second, he asserts that his substantive due process rights were violated because his detention does not bear a reasonable relation to a legitimate governmental purpose because he is not a flight risk or danger to the community.

Third, he asserts that the Respondents failed to arrest him pursuant to a warrant.

## DISCUSSION

### I. Petitioner's detention does not violate procedural due process.

Petitioner asserts that his detention violates procedural due process. Petitioner asserts that due process requires a pre-deprivation hearing and notice prior to detention. Petitioner does not assert that he was paroled or released under §§ 1226(a) or 1182(a). Rather, he appears to assert that any noncitizen present in the United States must first receive a pre-deprivation bond hearing. In his Petition he does not cite to authority for that proposition.[1]

Thus, at issue is whether Petitioner received the process due when he was (1) arrested pursuant to a warrant and (2) he received two bond hearings under § 1226(a). The Court concludes that Petitioner has not demonstrated a procedural due process violation.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. In the immigration context, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, such protections need not equate to those afforded to citizens. *Demore*, 538 U.S. at 522 ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

---

[1] In his Petition, Petitioner cites to a case where a noncitizen was paroled under §§ 1226(a) or 1182(d)(5)(A) and then detained again after his parole was revoked. *Cuauro v. Facility Warden*., No. 2:26-CV-01110-MLG-KK, 2026 WL 1895912, at *2 (D.N.M. June 22, 2026). That case held that insufficient process was provided. Similar to *Cuaro,* some courts have held that Respondents must follow regulations in the revocation of parole. Here, Petitioner was never paroled or released under § 1226(a), unlike *Cuaruo.* As explained below, this citation is therefore inapposite.

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'" (quoting *Arambula-Medina*, 572 F.3d at 828)). The Court assumes that Petitioner has a liberty interest in freedom from imprisonment and proceeds to whether Petitioner received adequate process.

In analyzing a procedural due process claim the Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Petitioner was arrested pursuant to a warrant and he received multiple bond hearings, at which an immigration judge concluded he was a flight risk or danger. Petitioner asserts he was entitled to a pre-deprivation hearing or notice prior to being detained. The Court concludes that in light of the warrant and bond hearing, he has not shown he was entitled to a pre-deprivation bond hearing or further notice prior to detention.

**First *Mathews* factor: Petitioner's interest.**

The first *Mathews* factor considers the private interest at stake. Petitioner's basic interest in being free from detention is at stake. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (finding that freedom from detention is "the most elemental of liberty interests"). However, Petitioner has already received the procedures authorized by Congress, a bond hearing under § 1226(a) where an immigration judge concluded he was a flight risk and danger. He was also arrested pursuant to a warrant, which appears to be the procedure authorized under the statute. *See* § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

**Second *Mathews* factor: Risk of erroneous deprivation and the value of additional safeguards.**

The second *Mathews* factor considers the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards. Here, Petitioner already received a bond hearing, at which the immigration judge concluded he was a flight risk. He was also arrested pursuant to a warrant under § 1226(a). Petitioner fails to demonstrate how these procedures were inadequate, or argue the probable value of additional procedural safeguards.

Petitioner asserted that he was arrested without a warrant, but Respondents produced a warrant with a certificate of service.

Petitioner asserts that he should not have been detained because he is not a flight risk or danger. Whether the Court would make the same detention decision is not at issue in this case. Petitioner already received the fundamental features of due process—notice and an opportunity to be heard. *See Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (citations omitted)).

Moreover, a bond hearing under § 1226(a) is generally sufficient process to mitigate the risk of erroneous deprivation. *See, e.g., Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022).

Petitioner asserts that his bond hearing was constitutionally insufficient because the immigration judge failed to adequately analyze the *Guerra* factors. The Court disagrees. Generally, the Court lacks jurisdiction to review a discretionary determination by an immigration judge in a bond decision. The release or bond decision by an immigration judge involves the weighing of evidence and is discretionary. § 1226(a); *Jennings v. Rodriguez,* 583 U.S. 281, 295 (2018). Discretionary bond decisions, such as the determination that a noncitizen is a flight risk, are generally not reviewable by a federal district court. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). "This provision precludes the Court from reviewing the IJ's decision that denied bond because Petitioner was a flight risk." *Mwangi v. Terry*, 465 F. App'x 784, 786–87 (10th Cir. 2012) ("Therefore, to the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.") (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)); *Jennings,* 583 U.S. at 295 (explaining that § 1226(e) bars a challenge to a discretionary judgment or decision by the Attorney General regarding detention or release but does not preclude challenges to the statutory framework); *see also Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision…").

However, the Court has discretion to review constitutional violations. For example, a noncitizen is entitled at least to fundamental fairness at a bond hearing. "An alien: (1) is entitled

to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

Here, Petitioner asserts that his due process rights were violated because the immigration judge failed to fully analyze the *Guerra* factors. Petitioner does not cite to any law that an immigration judge is required to mechanically recite and address all *Guerra* factors. At the bond hearing, the immigration judge must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). The immigration judge may also consider various discretionary factors, including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The immigration judge has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id.* at 40. The burden is on the detainee to demonstrate that release on bond is warranted. *Id.* The BIA case law following *Guerra* has either broadened these factors or taken an expansive view of these factors, allowing the immigration judge to consider whether a detainee has a valid or credible sponsor and the immigration status of a sponsor. *See Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 213 (BIA 2025); *Matter of R-A-V-P-*

, 27 I. & N. Dec. 803, 807 (BIA 2020). An immigration judge may also consider a detainee's immigration status and the likelihood that any application for relief will be granted. *Matter of R-A-V-P-*, 27 I. & N. Dec. at 807 (allowing immigration judge to consider a detainee's immigration status and likelihood that an application for relief, such as application for asylum, will be approved).

Here, Petitioner asserts that the immigration failed to expressly analyze all *Guerra* factors. Petitioner cites to insufficient authority that an immigration judge is required to recite all *Guerra* factors in the written decision. Rather, the authority above suggests that the immigration judge has broad discretion to choose which factors t consider and it is within the immigration judge's discretion to decide the weight assigned to each factor, as long as such decision is reasonable. *In Re Guerra*, 24 I. & N. Dec. at 40. Moreover, although the written decisions are available, Petitioner has not proffered the immigration judge's oral ruling. However, based on the written decision the immigration judge's decision appears to be based on multiple *Guerra* factors. The immigration judge found that Petitioner was a flight risk, noting that he had a speculative form of relief, no evidence of a fixed address, no family ties to United States citizens, a non-viable sponsor, and he entered in 2016. Doc. 6-4 at 1. He also analyzed the likelihood of success in removal proceedings. *Id.* All of this may be considered under *Guerra* and its progeny, cited above. *See, e.g., Matter of R-A-V-P-*, 27 I. & N. Dec. at 807 (allowing immigration judge to consider a detainee's immigration status and likelihood that an application for relief, such as application for asylum, will be approved). Assuming the immigration judge erred in weighing the evidence and factors, Petitioner has not demonstrated that such error amounts to a due process violation.

Petitioner appears to assert that the bond hearing should have been held before he was detained. But in his Petition, Petitioner has not cited to any authority that would suggest that a pre-

deprivation bond hearing is due where he was not previously released on parole under §§ 1226(a) or 1182(d)(5)(A). To be sure, some courts have held that a petitioner was entitled to a process prior to the revocation of parole under §§ 1226(a) or 1182. *See, e.g., Singh v. Noem,* 824 F. Supp. 3d 1197 (D.N.M. 2026). But here, Petitioner was not previously paroled or released under §§ 1226(a) or 1182(d)(5)(A). Therefore, where there was no parole or release to revoke, a pre-deprivation hearing or notice is generally not required. *see, e.g., Uzoh v. Baltasar*, No. 26-CV-01536-CYC, 2026 WL 3071536, at *3 (D. Colo. Oct. 14, 2026) (explaining that in cases which found that due process required a pre-deprivation hearing, the petitioner was previously released on parole under §§ 1226(a) or 1182).

In his Reply, Petitioner shifts his argument and asserts that because he was initially admitted into the United States under a visa (and overstayed by ten years), and lived in worked in the United States for ten years, he is in a similar posture to those paroled and he is entitled to a pre-deprivation bond hearing. He appears to cite to *Islam v. Mullin*, No. 1:26-CV-02753-MIS-JHR, 2026 WL 2568832 (D.N.M. Aug. 31, 2026). In that case, the respondents did not oppose relief and the district judge ordered that Petitioner may not be detained absent a pre-deprivation hearing as a *remedy* for a prior due process violation. *Islam v. Mullin*, No. 1:26-CV-02753-MIS-JHR, 2026 WL 2568832, at *2 (D.N.M. Aug. 31, 2026). The district court did not conclude that Respondents violated due process by failing to provide him a pre-deprivation bond hearing. Therefore, *Islam v. Mullin* is not on point. This is the same for Petitioner's other citation in his Reply, *Cruz. v. Warden,* 1:26-cv-3309 MIS/GJF, 2026 WL 3152140 (D.N.M. Oct. 21, 2026).

Petitioner also cites to *Turchyn v. Warden*, No. ED CV 26-6139-E, 2026 WL 3231987 (C.D. Cal. Oct. 28, 2026) ("For constitutional purposes, there should be no material difference between a noncitizen previously released from detention by immigration authorities and a

noncitizen whom immigration authorities previously chose not to detain."); Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."). These cases are not on point as the Petition does not include sufficient factual development to support this argument. He does not assert facts which demonstrate that ICE made a decision not to detain him after his visa expired. For example, when did he interact with ICE after his visa expired and when did ICE affirmatively choose not to detain him? Did ICE issue a custody determination? Petitioner has therefore not carried his burden.

In sum, Petitioner has not demonstrated that the procedures afforded to Petitioner – a bond hearing and warrant – suggest a risk of erroneous deprivation of his rights.

**Third *Mathews* factor: Government's Interest**

The final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The administrative burden of a pre-deprivation hearing or notice would likely not be great. However, when considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Detention has been deemed a valid part of sovereign prerogative "necessary to give effect to the provisions for the exclusion or expulsion of aliens." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno v.*

*Flores*, 507 U.S. 292, 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Here, Petitioner does not fully analyze the third factor. The significant weight afforded to the executive and legislature over immigration matters renders the third *Mathews* factor favorable to Respondents. Respondents also have a strong interest in detention while the removal proceedings are pending. *Miranda v. Garland*, 34 F.4th 338, 364-65 (4th Cir. 2022). Removal proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character." *Wong Wing v. United States*, 163 U.S. 228 (1896). Thus, the Respondents' interest here is strong.

Balancing the *Mathews* factors, the Court concludes that Petitioner has not demonstrated that he is entitled to additional process at this time. As explained above, Petitioner has not demonstrated a risk of erroneous deprivation of his liberty interest under the current procedures, such as a bond hearing and warrant. Moreover, he did not account for the Respondents' substantial interest in detention pending removal proceedings.

## II. **Petitioner fails to adequately assert a substantive due process claim.**

Petitioner states that his detention violates substantive due process violation. He appears to assert that his detention is reasonably related to a legitimate governmental purpose because he is not a flight risk or danger to the community.

Petitioner, a noncitizen in immigration custody, has substantive due process rights. *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981) ("[A]n excluded alien in physical custody within the United States may not be 'punished' without being accorded the substantive ... due process guarantees of the Fifth Amendment."). Respondents may violate a noncitizen's substantive due process rights if immigration detention becomes punitive. *Id.*

Nevertheless, "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (examining pretrial detention). A restriction on liberty is punitive rather than regulatory if (a) the government intends to impose punishment, or (b) a legitimate nonpunitive governmental purpose may not be rationally assigned to the restriction or the restriction is excessive in relation to that purpose. *Id.* at 747.

*Demore* reasoned that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore v. Kim*, 538 U.S. 510, 528 (2003); *see also Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1442 (5th Cir.) (applying rationality test to immigration detention), *amended,* 997 F.2d 1122 (5th Cir. 1993); *see also Kingsley v. Hendrickson,* 576 U.S. 389, 398, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015) (as to due process excessive force claim, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.").

Notably, Petitioner does not argue or explain why he is entitled to heightened scrutiny as opposed to rational-basis review.[2] *See, e.g., Gonzalez Aguilar v. McAleenan*, No. 19-CV-0412

[2] The Due Process Clause of the Fifth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests. When a fundamental right is at stake, the Government can act only by narrowly tailored means that serve a compelling state interest." *Dep't of State v. Munoz*, 602 U.S. 899, 909–10 (2024) (internal citation and quotation marks omitted). In deciding whether heightened scrutiny applies, the Court first considers "a careful description of the asserted fundamental liberty interest." *Id.* Next, "the Due Process Clause specially protects only those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Id.* Here, Petitioner does not argue that (1) the government is interfering with a fundamental right or (2) that his fundamental right is deeply rooted in the Nation's history and tradition.

WJ/SMV, 2019 WL 5864821, at *10 (D.N.M. Nov. 8, 2019) (explaining that petitioner failed to argue or explain why heightened scrutiny applied), *report and recommendation adopted sub nom. Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202 (D.N.M. 2020). Rather, he asserts that his detention is not reasonably related to a legitimate governmental purpose. Doc. 2 at 10-11. He has therefore failed to carry his burden on this point.[3]

"[S]ince *Mathews,* this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). Detention pending removal proceedings "is a constitutionally permissible part of the process." *Id.* at 531. Detention pending a removal decision "necessarily serves the purpose of preventing deportable [ ] aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528 (considering mandatory detention under §1226(c)). By its nature, detention under § 1226 is definite—its "obvious termination point" is the entry of a final removal order. *Zadvydas*, 533 U.S. at 697. Due process requires that the duration of detention bear "a reasonable relation to the purpose for which the individual was committed." *Zadvydas*, 533 U.S. at 690 (cleaned up).

Here, Petitioner has been detained since August 29, 2026 in immigration custody. He received two bond hearings, at which an immigration judge concluded that he was a flight risk or danger to the community. Petitioner asserts that his detention is excessive or not reasonably related

[3] Although the Tenth Circuit applied a heightened scrutiny in *Hoang,* that decision was vacated following *Demore*. *See Hoang v. Comfort*, 282 F.3d 1247, 1257 (10th Cir. 2002) ("However, even if a restriction was not meant to be punishment and a non-punitive purpose may be rationally assigned to it, the restriction may still constitute punishment if it imposes conditions so excessive in relation to the assigned purpose as to be considered punitive rather than regulatory."), *cert. granted, judgment vacated sub nom. Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003).

to a legitimate governmental purpose because he is not a flight risk or danger. He asserts that he has lived in the United States for ten years, pursued asylum relief as a derivative applicant, worked lawfully, paid taxes, and has no criminal history. But the immigration judge twice disagreed, concluding he was a flight risk. Whether the Court would make the same detention decision is not at issue in this analysis. Removal proceedings are pending and Petitioner has not argued or demonstrated that they will not be processed or he cannot be removed. Therefore, it is clear that Petitioner is being detained pending a decision on his removal, not to merely punish him. Moreover, a legitimate nonpunitive governmental purpose, adjudicating his removal and ultimately removing him, may be rationally assigned to his detention. He is not mandatorily detained. Rather, an immigration judge held a bond hearing, issued findings, and decided he should be detained as he is a flight risk. *See, e.g., Demore v. Kim*, 538 U.S. at 528 (Detention pending a removal decision "necessarily serves the purpose of preventing deportable [ ] aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."). Petitioner does not demonstrate how his detention is excessive in relation to its purpose.

Therefore, Petitioner's detention is not punitive, a non-punitive purpose may be rationally assigned to it, and his detention is not excessive in relation to its purpose. Based on the arguments and record before the Court, the Court finds that Petitioner has not demonstrated a substantive due process violation.[4] Therefore, Petitioner's substantive due process claim fails.

## III. Petitioner was not erroneously arrested without a warrant.

[4] Petitioner did not assert that heightened scrutiny applies, but instead analyzed whether his detention was reasonably related to a legitimate governmental purpose. *See* Doc. 1 at 10-11.

Petitioner also asserts in his Petition that he was arrested without a warrant. Pet. ¶ 59. Petitioner asserts that Respondents did not have a basis to detain him without a warrant.

Respondents provided evidence that they arrested Petitioner pursuant to a warrant, and there is a certificate of service. Doc. 6-2 at 1. The certificate of service suggests it was issued when he was arrested. In his Reply, Petitioner does not rebut this evidence. Respondents further assert as follows. They approached Petitioner in a consensual encounter and identified themselves as ICE officers. Doc. 6-1 at 2. After identifying him through his driver's license and performing an immigration check, they found that he lacked legal status. *Id.* He was subsequently detained. *Id.*

To be sure, Respondents must comply with their own regulations. *Abedi v. Carter*, No. 25-3179, 2026 WL 3149141, at *22 (10th Cir. Oct. 21, 2026). Here, Petitioner simply alleges in his Petition that his detention is unlawful because he was arrested without a warrant. But as explained above, it appears he was arrested pursuant to a warrant. Petitioner did not allege in his Petition that there was any other defect in the warrant or the process used to issue the warrant. The Court declines to sua sponte assert such a claim on his behalf.

**CONCLUSION**

The Court denies Petitioner's due process and detention claims, and his challenge to the result of his bond hearing.

**IT IS THEREFORE ORDERED** that Petitioner's Petition is hereby **DENIED.**

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE